O’NIELL, Chief Justice.
 

 The relatrix, Mrs. Idella Payne, was one of three companions of the defendant who is named in the title of this case. The four defendants were charged in a bill of information with committing a trespass, in violation of Section 822 of the Revised Statutes of 1870, as amended by Act No. 162 of 1910. A severance being granted, Mrs. Payne alone was tried; and she was convicted and sentenced to pay a fine of $10 and costs, or, in default of payment thereof, to be imprisoned in the parish jail for 10 days. Having no right to appeal from so small a sentence, Mrs. Payne invoked the supervisory jurisdiction of this court and obtained a writ of certiorari and a rule on the judge and the district attorney to show cause why the conviction and sentence should not be annulled.
 

 The relatrix pleads that Section 822 of the Revised Statutes, when applied to the facts of her case, is unconstitutional for certain reasons set forth in her petition, and she pleads, in the alternative, that, if the conviction should be held valid, the sentence is illegal because it was imposed on the same day on which she was tried and found guilty. She refers to Article 521 of the Code of Criminal Procedure, which provides: “In all criminal cases at least
 
 *22
 
 twenty-four hours shall elapse between conviction and sentence, unless the accused waive the delay and ask for the imposition of sentence at once; provided that it shall be within the discretion of the trial court, and not subject to the review of any other court or judge, to grant or to refuse to grant a longer delay than twenty-four hours between conviction and sentence”.
 

 Mrs. Payne did not employ an attorney until the sentence was imposed upon her. She avers that when she was called up for sentence she was not requested by the judge to waive the delay of twenty-four hours, and that she did not ask for the immediate imposition of sentence. The judge, in answer to this allegation, admits— and the minutes show — that the defendant was sentenced on the day on which she was convicted, and he admits that she was not requested to waive the delay of twenty-four hours; but he avers that he explained to her that she was entitled to the delay of twenty-four hours before being sentenced, and that she replied that she was ready for immediate sentence. Our opinion is that that was a sufficient waiver of the delay. The statute does not require that, when a defendant is called up for sentence, in order to waive the benefit of the delay of twenty-four hours he must say, in so many words, that he waives the delay and asks for the imposition of sentence at once. It is sufficient if the defendant, on being informed by the judge that he is entitled to the delay of twenty-four hours, declares that he is ready to receive the sentence. State ex rel. Chicola et al. v. General Manager of Louisiana State Penitentiary, 188 La. 694, 177 So. 804. The important fact in the present 'case is that the defendant was advised by the judge, when he was about to impose the sentence upon her, that she was entitled to the delay of twenty-four hours. Besides, it is not shown or contended that a delay in the imposing of the sentence was a matter of importance to the defendant in this instance. We do not find any merit in this alternative complaint.
 

 The principal plea made by the relatrix is that Section 822 of the Revised Statutes, which forbids a person to trespass upon the land of another, cannot be applied to the facts of this case without violating the First and the Fourteenth Amendment of the Constitution of the United States, and the 3rd and 4th section of Article I of the Constitution of this State. The provisions to which the relatrix refers in the First Amendment of the Constitution of the United States are that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press. The provisions to which the relatrix refers in the Fourteenth Amendment are that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within- its jurisdiction the equal protection of the laws. The provision referred to in the 3rd section of Article I of the Constitution of Louisiana is that no law shall ever be passed to curtail or restrain the liberty of speech or of the press. And
 
 *23
 

 the 4th
 
 section of this article is as follows: “Every person has the natural right to -worship God according to the dictates of his own conscience. No law shall be passed respecting an establishment of religion, nor ■prohibiting the free exercise thereof; nor ■shall any preference ever be given to, nor any discrimination made against, any church, sect or creed of religion, or any form of religious faith or worship.”
 

 In this connection the relatrix avers that •she and the three other defendants are ordained ministers of the Gospel, that they are Jehovah’s Witnesses, and members and accredited representatives of a Pennsylvania •corporation called The Watchtower Bible and Tract Society; that their duties are to visit the people at their homes and to present to them recorded Bible lectures, Bibles, •Christian pamphlets, and Christian literature, relating only to the Kingdom of Almighty God, for which Jesus taught His followers to pray; and that it was in pursuit of that calling and in the performance ■of those duties that she went upon the -plantation upon which she is accused of having trespassed. She avers that she went by way of the usual and customary entrance and approached the home on the plantation, and, having attracted the attention of the lady who occupied the home, informed her of the purpose of the visit and the nature of the work in which she and her companions were engaged; and that she, the relatrix, “was promptly ordered off the private premises” by the lady of the house. The lady referred to was Mrs. W. A. Mackie, and it appears that she was the «owner or her husband was the manager of the place. The relatrix avers that she and her co-workers then quit the private premises of Mrs. Mackie, but continued their house-to-house preaching of the Gospel, and visited the homes of the tenants on the plantation, until their activities attracted the attention of Mrs. Mackie and she ordered them off of the place.' The relatrix avers that she refused to quit the premises, so far as visiting the homes of the people — meaning the tenants — was concerned, and that she “continued what she maintained was her God-given duty and lawful right to carry the Gospel from house to house.” She avers that later that day she was charged with trespass, by the affidavit of Mrs. Mackie. The relatrix avers that the testimony heard on the trial of the case was not taken down by a stenographer or reduced to writing. She admits in the brief filed by her attorney in this court that the plantation of the Magnolia Farms Company was “posted as required by law”, — meaning, as we understand, that the plantation was posted with warnings against trespassing, as required by Section 822 of the Revised Statutes. The statute declares: “Whoever shall enter upon any plantation or farm, or upon any grounds upon which crops or fruits of any kind are grown, or into any enclosure without the permission of the owner, shall upon conviction therefor be sentenced to pay a fine of not exceeding Fifty Dollars, or to imprisonment not exceeding ninety days, provided that this Act shall not apply except to such enclosures as are properly and sufficiently posted by the owner warning trespassers off such premises.”
 

 
 *24
 
 The judge in his answer to the rule admits that the testimony was not taken down by a stenographer or reduced- to writing, and he avers that it is not customary to have the testimony taken down in misdemeanor cases where the defendant has no right of appeal.' In fact this court has not jurisdiction to decide questions of fact which determine the guilt or innocence of the party accused in a criminal prosecution. In cases which come to us as this case has come, on a writ of certiorari, and without the testimony which was heard by the judge, we accept as true the facts stated in his answer to the rule; and if those facts show affirmatively that the defendant is not guilty of a violation of the law we have the authority and the duty to set aside the conviction, because we do not thereby decide a question of fact relating to the question of guilt or innocence. But the judge’s recital of the facts which were proved on the trial of this case shows that the defendant’s conduct constituted a trespass, as defined in Section 822 of the Revised Statutes. The judge says in his response to the rule that the evidence showed that the defendant and her companions went into the enclosure of the plantation, and into the yard of Mrs. Mackie, owner of the property, “and aroused her from her repose by playing a musical récord and by loud talk”; and that Mrs. Mackie, after trying to find out who the visitors were, requested them to leave. It appears from what the judge says that the defendant and her companions expressed some resentment, “but finally left the yard”. The judge says that according to the testimony of Mrs. Mackie she left her home later in the day and while driving through the-fields found the defendant and her companions engaged in playing musical records and talking to the farm workers, that she remonstrated with them for interfering with the ■ farm work, and again requested them to leave the premises, and. that they refused to leave. The judge says-that the testimony showed that the land entered upon by the defendant was properly and sufficiently posted with Warnings-against trespassing, “and that the defendant entered thereon in defiance of such, notice and remained in defiance of MrsMackie’s request that she leave”.
 

 We understand from the pleadings of the relatrix and the response of the judge that the “recorded Bible lectures”' which thp relatrix says she was presenting,, and the music which she was playing, were produced from phonograph records. The argument of the relatrix is that, because she- and her companions were engaged in such, praiseworthy work, preaching Christianity and distributing “Christian pamphlets and other Christian literature”, she and her coworkers, while so engaged, were protected by the constitutional inhibition of laws .respecting an establishment of religion, or prohibiting the free exerci'se thereof, or abridging the freedom of speech, or of the: press. These guaranties of freedom of religious worship, and freedom of speech, and of the press, do not sanction trespass, in the name of freedom. We must remember that personal liberty ends where-the rights of others begin. The constitutional inhibition against the making of a_ ,law respecting an establishment of religion»
 
 *25
 
 or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press, does not conflict with the law which forbids a person to trespass upon the property of another.
 

 The decisions cited in the brief of the attorney for the relatrix do not sustain "his argument that the statute against trespassing, when applied to this case, is violative of the constitutional guaranties which we have referred to. Those decisions do not support the contention that the application of the statute to the facts of this ■case abridges the privileges or immunities of the defendant as a citizen of the United States, or deprives her of her liberty or property without due process of law, or denies her the equal protection of the laws.
 

 The rule directing the judge of the district court and the district attorney to show cause why the conviction and sentence should not be annulled is dismissed.